UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

MID-CONTINENT CASUALTY CO., a foreign
corporation,

    Plaintiff,

vs.              CASE NO.:

REGENCY CONSTRUCTORS, LLC, a Florida
Limited Liability Company, OAKBROOK
BUILDING AND DESIGN, INC., a Florida
Corporation, PAUL and CARON JOHNSON,
citizens of Florida, and ISSA and NOHA
ASAD, citizens of Florida,

    Defendants.        /

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Mid-Continent Casualty Company ("MCC"), sues the Defendants, Regency Constructors, LLC ("Regency"), Oakbrook Building and Design, Inc. ("Oakbrook"), Paul and Caron Johnson ("Johnson"), and Issa and Noha Asad ("Asad") for declaratory relief as follows:

1. This is an action for declaratory relief pursuant to 28 U.S.C. §2201 for the purposes of determining an actual controversy between the parties as to the scope of MCC's duty to indemnify under its contract of insurance with Regency.

2. The plaintiff, MCC, is an Ohio Corporation with its principle place of business in Tulsa, Oklahoma.

3. The defendant, Regency, is a Florida Limited Liability Company with its principle place of business in Coral Springs, Florida.

4. The defendant, Oakbrook, is a Florida Corporation with its principle place of business in Boca Raton, Florida.

5. The defendants, Johnson, are citizens of the state of Florida and currently reside in Broward County, Florida.

6. The defendants, Asad, are citizens of the state of Florida and currently reside in Broward County, Florida.

7. Jurisdiction is proper because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest and costs.

8. Venue is proper in the United States District Court for the Southern District of Florida, Broward Division, because one or more defendants reside here, or the events or omissions giving rise to the claims set forth below occurred here.

9. MCC entered into contracts of insurance with Regency, policy Nos. 04-GL-000658547 which was in effect from 1/1/2007 to 1/1/2008 and No. 04-GL-000700872 which was in effect from 1/1/2008 to 1/21/2009. Both policies had limits of liability of $1,000,000 per occurrence and $2,000,000 in the aggregate, and a $25,000 deductible per claim for bodily injury and/or property damage liability combined. Copies of the policies are attached as Composite Exhibit "A" (the "Policies").

10. The Policies contain the following pertinent insuring agreement:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damages" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance doe not apply. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

  (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

  (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

 No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

 b. This insurance applies to "bodily injury" and "property damage" only if:

  (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory":

  (2) The "bodily injury" or "property damage" occurs during the policy period; and

  (3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to he policy period.

 c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

 d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

14473585v1 907550 56475

  (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

  (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

  (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

11. The Policies contain the following pertinent exclusions:

**2.** **Exclusions**

This insurance does not apply to:

* * *

 **b.** **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

  (1) That the insured would have in the absence of the contract or agreement; or

  (2) Assumed in a contract or agreement that is an "insured contract", provided the 'bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

   (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

   (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

* * *

    **f.**    **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

        (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

        (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

        (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

14473585v1 907550 56475

* * *

k.  **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

* * *

m.  **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

    (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.  **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency. inadequacy or dangerous condition in it.

* * *

14473585v1 907550 56475

12.    The Policies contain the following pertinent definitions:

**SECTION V – DEFINITIONS**

\* \* \*

8.    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

  a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

  b.    You have failed to fulfill the terms of a contract or agreement;

  if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

\* \* \*

13.   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

15.   "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Water includes materials to be recycled, reconditioned or reclaimed.

16.   "Products-completed operations hazard":

  a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1)    Products that are still in your physical possession; or

    (2)    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      (a)    When all of the work called for in your contract has been completed.

14473585v1 907550 56475

    (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  b. Does not include "bodily injury" or "property damage" arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by your, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

    (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

  a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

21. "Your product":

  a. Means:

    (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

8

    (a) You;

    (b) Others trading under your name; or

    (c) A person or organization whose business or assets you have acquired; and

  (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

 b. Includes:

  (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

  (2) The providing of or failure to provide warnings or instructions.

 c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

 a. Means:

  (1) Work or operations performed by you or on your behalf; and

  (2) Materials, parts or equipment furnished in connection with such work or operations.

 b. Includes:

  (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

  (2) The providing of or failure to provide warnings or instructions.

13. The Policies contain the following endorsement:

**EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

9

14473585v1 907550 56475

Exclusion **l.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

2.   Exclusions

This insurance does not apply to:

l.   **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

\* \* \*

14.   Regency, as a general contractor, was the builder of Johnson's home, located at 12708 Equestrian Trail in Davie, Florida and Asad's home, located at 12767 Equestrian Trail in Davie, Florida ("the Projects").

15.   Oakbrook was sued by Johnson and Asad in the Seventeenth Circuit Court in and for Broward County, Florida, Case Nos. 09-026426 (04) and 09-026441 (09), respectively. Copies of the complaints are attached as Composite Exhibit "B" ("Underlying Actions").

16.   Oakbrook then sued Regency as a third-party defendant in the Underlying Actions. Copies of the third-party complaints are attached as Composite Exhibit "C" ("Third-Party Complaints").

17.   Upon information and belief, Regency subcontracted the work to subcontractors, including a subcontractor who installed the drywall at the Projects.

18.   In the Underlying Actions, Johnson and Asad sued Oakbrook for breach of contract, seeking damages allegedly caused by Oakbrook's defective work/defective product. These damages include the cost to remove and replace the defective work/defective product, and the cost to repair and/or replacement the HVAC, plumbing and electrical systems, appliances and other interior contents of the home.

19. In the Third-Party Complaints, Oakbrook sued Regency for strict products liability, contribution and common law indemnity. Oakbrook alleges that any defects alleged by Johnson and Asad in the Underlying Complaints are entirely the liability of Regency

20. Regency tendered the Third-Party Complaints to MCC for a defense and complete indemnification in the event of a judgment against it in the Third-Party Complaints.

21. MCC is currently defending Regency, subject to a full and complete reservation of rights.

22. Oakbrook, the Johnsons and the Asads are necessary parties to this action as their rights will be impacted by the court's determinations.

## COUNT I – NO DUTY TO INDEMNIFY FOR DAMAGES THAT DO NOT CONSTITUTE PROPERTY DAMAGE

23. MCC realleges paragraphs 1 through 22 as paragraph 23 of Count I.

24. MCC's duty to indemnify is limited to pay damages because of property damage caused by an occurrence. To the extent Oakbrook is seeking to recover from Regency the cost to repair and replace Regency's defective work/defective product, as opposed to damage caused by Regency's defective work/defective product, or damages for economic loss, such damages do not meet the definition of property damage.

25. MCC's duty to indemnify is limited to property damage that occurs during the policy periods. To the extent Oakbrook is seeking to recover from MCC any damages that did not take place during the MCC policy periods, MCC has no duty to defend or indemnify Regency.

14473585v1 907550 56475

26. In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to indemnify its insured in the Underlying Actions and in particular to:

    a. Whether MCC has an obligation to indemnify Regency for the cost to remove and replace the defective work/defective product;

    b. Whether MCC has an obligation to indemnify Regency for the cost to remove, repair and replace undamaged property in order to remove and replace the defective work/defective product for which no coverage is provided under the Policies;

    c. Whether MCC has an obligation to indemnify Regency for economic damages or attorney's fees; and

    d. Whether MCC has an obligation to indemnify Regency for only the damages, if any, that took place during the policy periods.

27. Without this Court's declaration, the Underlying Actions cannot be settled, as the parties are in doubt as to what damages constitutes property damage, if any, under the Policies.

28. Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Policies.

Wherefore, MCC respectfully requests this Court to:

    a. Take jurisdiction over this matter;

    b. Find and declare that MCC's obligation under its Policies is limited to indemnifying Regency for property damage, if any, as that term is defined in the Policies;

14473585v1 907550 56475

c.  Find and declare that MCC's obligation under its Policies is limited to indemnifying Regency for property damage, if any, that took place during the policy periods; and

d.  Enter any other order the Court deems proper under the evidence and circumstances.

## COUNT II – NO DUTY TO INDEMNIFY FOR DAMAGES EXCLUDED FROM COVERAGE

29. MCC realleges paragraphs 1 through 28 as paragraph 29 of Count II.

30. Regency was the builder of the home and hired subcontractors to perform the work.

31. The MCC policies contain breach of contract, your work, intentional acts, your product, damage to work performed by subcontractors on your behalf, pollution, impaired property and recall exclusions.

32. In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to indemnify its insured in the Underlying Actions.

33. Without this Court's declaration, the Underlying Actions cannot be settled, as the parties are in doubt as to what damages are covered under the Policies.

34. Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Policies.

Wherefore, MCC respectfully requests this Court to:

a.  Take jurisdiction over this matter;

b.  Find and declare that MCC's obligation under its Policies is limited to indemnifying Regency for damages, if any, not excluded by the Policies; and

14473585v1 907550 56475

   c. Enter any other order the Court deems proper under the evidence and circumstances.

Dated: _____4/2/2010.

               HINSHAW & CULBERTSON LLP

               _____
               Ronald L. Kammer
               Florida Bar No. 360589
               rkammer@hinshawlaw.com
               Pedro E. Hernandez
               Florida Bar No. 30365
               phernandez@hinshawlaw.com
               9155 S. Dadeland Boulevard
               Suite 1600
               Miami, FL 33156-2741
               Telephone: 305-358-7747
               Facsimile: 305-577-1063
               *Counsel for Mid-Continent Casualty Company*

14473585v1 907550 56475